**OTTENHEIMER BROS., Inc., et al. v. LIBUWITZ.**

No. 4091.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1937.

Samuel E. Darby, Jr., of New York City (Emanuel E. Ottenheimer, of Baltimore, Md., on the brief), for appellants.

Edwin S. Clarkson, of Washington, D. C., for appellee.

Before PARKER and SOPER, Circuit Judges, and WATKINS, District Judge.

SOPER, Circuit Judge.

Two patents were involved in the first appeal in this case (C.C.A.) 74 F.(2d) 858, the Peterson patent No. 1,206,464 and the Ottenheimer reissue patent No. 16,941 issued on April 24, 1928, upon an original application filed January 31, 1925. We held that the Peterson patent was not infringed by the defendant and remanded the case so far as the Ottenheimer patent was concerned to afford both parties a full opportunity to present evidence bearing upon all the issues involved.

The general purpose of both patents was to provide a showcase for perishable foods wherein they may be attractively displayed, protected from dust and germs, and kept suitable for human consumption by refrigeration. The problem was to supply light without interfering with the refrigeration. As shown by the drawings accompanying the specifications, the Ottenheimer structure has a wide bottom and a top defined by a narrow frame structure which conceals the lights and sustains the inclined glass front at its upper edge. The electric lamps are located in a compartment at the top, separated from the display chamber by a glass partition and provided with a ventilating channel to the outside air. At the bottom of the case is located an ice chamber

which has a deep portion in the rear and a shallow portion in front, so connected that ice may be placed in both. The top of the shallow front portion forms the bottom of the display chamber and serves as a shelf for the display of the goods. The deeper portion of the ice chamber is separated from the display chamber by a vertical partition, at the top and bottom of which are left spaces for the passage of air. Communication is also established between the shallow portion of the ice chamber and the display chamber by airports adjacent to the front edge of the shelf. The display chamber is considerably higher than the rear portion of the ice chamber.

The glass panel at the top of the display chamber serves to reduce the transmission of heat; but, according to the specifications, is not always sufficient for this purpose, and therefore additional means are provided to maintain a relatively inert body of air within the narrow upper portion of the display chamber so as to retard the heated air from mingling with the circulating air current below. These means consist of an upstanding flange or baffle at the front edge of the bottom shelf of the display chamber to deflect the air emerging from the airports in the shelf backwardly into the higher part of the refrigerator; and also another baffle at the top of the display case consisting of a flange vertically depending from the front edge of the glass partition also designed to deflect the rising air into the rear portion of the ice chamber.

The defendant's structure is substantially similar in its exterior outline. Differences in the refrigerating portion of the case and in the arrangement of the lighting compartment, immaterial in this discussion, were pointed out in the former opinion. A difference of greater importance in the defendant's showcase is the absence of the baffles used in the patented structure for the deflection of the air currents. On this account, it was suggested in the former opinion that, in so far as the claims of the patent, which include one or both of the baffles, are concerned, infringement was not shown, but, without finally deciding the point, the case was remanded for a new trial as to the Ottenheimer patent for the reasons set out in the opinion. Upon the new trial the plaintiff abandoned the charge of infringement with respect to all claims which include one or both baffles, thus eliminating claims 2, 3, 5, 6, 7, 8, and 10 from the controversy.

There remain claims 1, 4, 9, 11, 12, 13, and 14, of which claims 1, 9, and 12, being typical, are set out as follows:

"1. The combination of a display case having a wide bottom, a top defined by a narrow frame structure, and an inclined transparent front sustained at its upper edge by said frame structure; artificial lighting means concealed within the top of said frame structure; and refrigerating means arranged to exert a localized refrigerating effect in the lower portion of said case."

"9. The combination of a display case; artificial lighting means mounted in the top of said case; a translucent panel mounted within said case and isolating said lighting means from the main interior portion of said case; ventilating means for discharging heated air from said lighting means; and refrigerating means serving to produce an air circulation in said case."

"12. The combination of a display case having a wide bottom, a top defined by a relatively narrow frame structure, and an inclined transparent front sustained at its upper edge by said frame structure; artificial lighting means housed within said frame structure; a light transmitting partition retarding the flow of heat from said lighting means to the lower porton of said case; and refrigerating means operative in the lower portion of said case."

The District Judge found infringement of all of the claims in suit, a conclusion which the defendant disputes on the ground that its lighting device is not concealed within the top of the frame structure, as called for in claim 1, and is not mounted in the top of the case, or provided with a translucent panel isolating the lights from the interior portion of the case, as provided in claims 9 and 12. We need not stop to discuss these points, as we are of opinion that the District Judge was correct in his further finding that all of these claims are invalid on the ground that they disclose an aggregation of old elements in which each element merely performs an old and well-known result. The illumination of showcases was not new with the patentee, nor were the several features of the patented structure, disregarding the baffles, new in the art. Thus the earlier patent to Ottenheimer, No. 1,390,812 of 1921, and the patent to Ehrlich, No. 1,451,566 of 1923, showed a refrigerated display case or counter of similar exterior outlines. Lights con-

cealed in the top of a showcase were revealed in the patents to Petz, No. 634,701 of 1899 and No. 665,264 of 1901, and in the patent to La Berge, No. 845,652 of 1907. Ventilation of the compartment in which concealed lights were disposed was also disclosed in the last two patents mentioned, and was accomplished by providing communication from the vicinity of the light to the outside air. Moreover, the Spencer patent No. 1,007,498 of 1911, for illuminating devices adapted to be used in connection with cashier's cages and the like, and showcases actually used in Wannamaker's Philadelphia store as early as 1913, contained a light concealed in a narrow upper frame of the case isolated by a panel of glass placed below the light. Nor was it new to place an electric light in a refrigerating case used for the conservation of foods, for this was shown by the patent to Kroenke, No. 919,030 of 1909.

Pictures of the Wannamaker display cases were introduced in evidence and the designer of them testified that from 1913 to the present day they have been in constant use, so arranged that electric lights placed in a housing in the top wall were concealed from view by a glass partition. Ventilation was effected by apertures in the end of the housing, and this was considered especially important when it was necessary to protect merchandise, such as jades or perfumery, from the heat generated by the lights. It is thus apparent that the patent in suit was merely an aggregation of old elements in so far as the claims are concerned which omit any mention of the baffles. All that the patentee did was to place the Wannamaker concealed lights in the refrigerator case shown in the Ehrlich patent and the earlier Ottenheimer patent.

■ The plaintiff places special reliance upon the finding of the District Judge that, although the several elements described in the patent in suit were known to the art, nevertheless prior to the plaintiff's structure no one had ever constructed a like combination embodying all of the same elements. This statement is correct, but it is likewise true, as pointed out by the District Judge, that a mere aggregation of old elements is not patentable unless they are combined as to accomplish some new result. As was said in Richards v. Chase Elevator Co., 158 U.S. 299, 302, 15 S.Ct. 831, 833, 39 L.Ed. 991: "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements." In Powers-Kennedy Corp. v. Concrete Co., 282 U.S. 175, 186, 51 S.Ct. 95, 99, 75 L.Ed. 278, the Supreme Court, speaking of a patented apparatus for transporting and treating concrete, said "It consists of a combination of elements all of which were old in the art. Its application to the transportation of concrete did not involve invention. Neither the combination of old elements or devices accomplishing no more than an aggregate of old results (Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241; Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U.S. 492, 19 S.Ct. 641, 43 L.Ed. 1058; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196), nor the use of an old apparatus or appliance for a new purpose (Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267), is invention." See, also, Demco, Inc., v. Doughnut Machine Corp. (C.C.A.) 62 F.(2d) 23; Doughnut Machine Corp. v. Joe-Lowe Corp. (C.C.A.) 67 F.(2d) 135; Id. (C.C.A.) 71 F.(2d) 423.

■ It is not always easy to apply this formula or to distinguish a mere aggregation from a patentable combination; but in the pending case we have no difficulty in reaching the conclusion that the aggregation disclosed by the patentee did not require more than the ingenuity of the ordinary craftsman to reach the desired end. The very considerable commercial success which the owner of the patent has enjoyed does not unsettle our conviction, for such a consideration is useful only in cases of doubt. Moreover, in the pending case the plaintiff has made no effort to show that commercial success has attended the kind of showcase without baffles which is described in the claims in suit, or indeed that such showcases have been put upon the market, and this omission is significant in view of the stress placed in the specification of the patent upon the efficacy of the baffles to maintain below the glass panel a layer of inert air and to prevent the heated air in its passage through the showcase from coming in contact with the glass panel.

■ The decree of the lower court, holding that the patent in suit is void for lack of invention in view of the prior art, is affirmed and the bill of complaint should be dismissed.

Affirmed.